UNITED GAS PIPE LINE CO. *v.* FEDERAL POWER
COMMISSION ET AL.

No. 49.   Argued October 19–20, 1966.—Decided November 14, 1966.

*Vernon W. Woods* argued the cause and filed briefs for petitioner.

*Peter H. Schiff* argued the cause for respondent Federal Power Commission. With him on the brief were *Solicitor General Marshall, Ralph S. Spritzer, Richard A. Posner, Richard A. Solomon* and *Howard E. Wahrenbrock.*

*Bruce R. Merrill* argued the cause and filed a brief for respondent Continental Oil Co.

MR. JUSTICE WHITE delivered the opinion of the Court.

United Gas Pipe Line Company and Continental Oil Company executed a contract effective January 31, 1953, providing for the sale by Continental and the purchase by United of gas produced from the Johnson Bayou Field in the State of Louisiana, at prices stated in the contract. The contract was to run for 10 years and from year to year thereafter unless terminated by either party on 90 days' notice. To effectuate delivery to United's nearby Mud Lake transmission line for transportation of the gas into the Beaumont, Texas, area, Continental constructed several thousand feet of pipeline, separators and storage tanks. United, for its part, constructed a

short length of pipeline, a separator, a meter station and valves. United sought, was granted and accepted a certificate of public convenience and necessity authorizing the continued transportation of gas from the Johnson Bayou Field and the construction and operation of the facilities necessary therefor. 14 F. P. C. 582. Likewise, Continental was issued a certificate authorizing the sale of gas to United under the terms of the contract. 15 F. P. C. 1650.

In October 1962 Continental elected to terminate the contract at the end of the primary term. Negotiations for a new contract were fruitless. Continental, after refusing United's offer to continue purchasing on a day-to-day basis at the old contract rate, filed a rate increase with the Commission asking for an effective date of January 31, 1963. The Commission accepted the filing over United's protest.[1] United, after advance notice to Continental, then ceased purchasing gas from the Johnson Bayou Field on January 31, 1963, and has since refused to purchase gas from that source. Following a petition by Continental, an order to show cause issued by the Commission to United and a full hearing, the Commission found that United, by ceasing to take gas from the Johnson Bayou Field, had abandoned its facilities used for this purpose as well as the service rendered by these facilities, contrary to the provisions of § 7 (b) of the Natural Gas Act which forbid such abandonment without the consent of the Commission being first obtained.[2] Accordingly, the Commission ordered United

---

[1] United unsuccessfully petitioned for rehearing of the Commission's order approving the rate increase, 29 F. P. C. 525, but did not seek judicial review of the order.

[2] Section 7 (b) of the Act provides that "No natural-gas company shall abandon all or any portion of its facilities subject to the jurisdiction of the Commission, or any service rendered by means of such facilities, without the permission and approval of the Commission first had and obtained, after due hearing, and a finding by the Com-

to "renew operation of its Johnson Bayou Field facilities used to purchase gas from Continental" and directed that the purchases by United were to be at Continental's new rate and in volumes consistent with the terms of the contract previously in force. 31 F. P. C. 1079, 1086. The Court of Appeals upheld the Commission's order, 350 F. 2d 689, and we granted certiorari, 383 U. S. 924, because the case involved an important question concerning the Commission's jurisdiction under the Natural Gas Act. We affirm.

We agree with the Commission and the Court of Appeals that United's refusal to continue receiving gas from the Johnson Bayou Field constituted an abandonment of "facilities" and a "service" to which § 7 (b) applies. That section places conditions on the abandonment of facilities or of any service rendered thereby. The facilities covered by the section are those "subject to the jurisdiction of the Commission," the further identification of which requires resort to other sections of the Act. Section 1 (b)[3] declares that the provisions of the Act are to apply to: (1) the transportation of natural gas in interstate commerce, (2) the sale in interstate commerce of natural gas for resale for ultimate public consumption and (3) natural gas companies engaged

---

mission that the available supply of natural gas is depleted to the extent that the continuance of service is unwarranted, or that the present 'or future public convenience or necessity permit such abandonment." 52 Stat. 824, 15 U. S. C. § 717f (b).

[3] The text of the section provides: "The provisions of this Act shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale, but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas." 52 Stat. 821, 15 U. S. C. § 717 (b).

in such transportation or sale. Under § 7 (c)[4] no natural gas company is permitted to engage in the transportation or sale of natural gas, or to undertake the construction or extension of facilities therefor without a certificate of public convenience and necessity authorizing such acts or operations. Thus the "facilities subject to the jurisdiction of the Commission" which are reached by the abandonment provisions of § 7 (b) are those facilities required for the interstate transportation of natural gas and for the interstate sale of gas for resale to the ultimate consumer. Conversely, it would seem beyond argument that the proscription of abandoning "any service" rendered by those facilities would include both transportation and sale, the twin functions which subject the facilities to the provisions of the Act.

We are convinced that United's Johnson Bayou Field facilities were subject to the jurisdiction of the Commission. They were constructed solely for the purpose of the taking and interstate transportation of Johnson Bayou gas. They could not, therefore, be abandoned without the consent of the Commission and we do not understand United's position in this Court to be otherwise. United, however, insists that there has not in fact been a § 7 (b) "abandonment." It is true that the Johnson Bayou Field facilities were neither removed nor disconnected. Their use could have been resumed at

---

[4] The text of the section, in relevant part, provides that "No natural-gas company or person which will be a natural-gas company upon completion of any proposed construction or extension shall engage in the transportation or sale of natural gas, subject to the jurisdiction of the Commission, or undertake the construction or extension of any facilities therefor, or acquire or operate any such facilities or extensions thereof, unless there is in force with respect to such natural-gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations . . . ." Added by the Act of February 7, 1942, 56 Stat. 83, 15 U. S. C. § 717f (c).

any time had United so desired. But the physical alteration of facilities is not a *sine qua non* restricting the Commission's jurisdiction under § 7 (b). Here United ceased taking and transporting gas from the Johnson Bayou Field on January 31, 1963, has not taken that gas or used its facilities constructed for that purpose since that time and has no intention of doing so as long as Continental's present rates continue in effect. United, the Commission found, had by its own action rendered its facilities "operationally dormant for a period of indefinite duration." 31 F. P. C. 1079, 1083. In addition, the Commission found that its interest went beyond the physical alteration of facilities. "We have a regulatory responsibility to assure that gas once dedicated to the interstate market will continue to be available to that market so long as the public interest demands . . . ." 31 F. P. C. 1079, 1082. As the instant proceeding unmistakably revealed, the responsibility of the Commission could not adequately be met if it were powerless to assure that facilities "certificated to transport this gas," *ibid.*, continued to operate. To hold United's conduct an abandonment within the meaning of § 7 (b) is a reasonable interpretation of the Act and we shall not disturb it.

The corollary conclusion, inescapably presented on the face of the Act itself, is that the consent of the Commission is necessary before United can cease taking and transporting Johnson Bayou gas, since this is a service United rendered through the facilities it constructed for that very purpose. United, however, contends that the words "any service" in § 7 (b) include only the sale of natural gas, not the taking and transportation of gas from any particular field. In its view it is free at any time to abandon the interstate transportation of gas from the Johnson Bayou Field, and to decide for itself wholly apart from the Commission what gas it will continue to transport interstate. But nothing in the Act, its

legislative history or in our cases has been called to our attention which persuasively supports this narrow view or which would justify recognizing the sale of gas as a service but not the preceding transportation without which there would be no sale at all.

The Act gives the Commission jurisdiction over interstate transportation of natural gas as a separate and distinct matter, whether the transportation is for hire or for sale and whether the sale is for consumption or resale. *FPC* v. *East Ohio Gas Co.,* 338 U. S. 464; *FPC* v. *Transcontinental Gas Pipe Line Corp.,* 365 U. S. 1; *Panhandle Eastern Pipe Line Co.* v. *FPC,* 359 F. 2d 675. Here, of course, the transportation is not for hire but for sale, some for consumption and some for resale. What is more, in *Sunray Mid-Continent Oil Co.* v. *FPC,* 364 U. S. 137, 149–150, the Court clearly recognized that the term "service" is not confined to sales but extends to the "movement of gas in interstate commerce" and that one who engages in *either* the sale or the transportation of gas is performing a service within the meaning of both §§ 7 (e) and 7 (b). It could not be more clear that United here abandoned a "service," the taking of Johnson Bayou Field gas and its transportation in interstate commerce. The statutory necessity of prior Commission approval, with its underlying findings, cannot be escaped.

Even so, United argues that the Act gives the Commission no authority over the purchase of natural gas, and that the Commission therefore exceeded its jurisdiction in ordering United to continue purchasing gas from Continental in amounts specified in an expired contract and at prices set unilaterally by Continental. It is true that the Act does not in so many words grant the same express authority over purchases to the Commission that it does over sales. Neither is there a blanket exemption of Commission jurisdiction over the purchase of

gas, and there is express authority over transportation as well as sale. Under § 16, the Commission has the power "to perform any and all acts, and to . . . issue . . . such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of this Act." 52 Stat. 830, 15 U. S. C. § 717o. Where it is necessary to regulate the purchase of gas in some respects to carry out its expressly granted authority over transportation and sale, the Commission must have the power to do so. In the case before us, there has been a § 7 (b) abandonment of facilities or services without Commission consent. It is therefore quite proper for the Commission to order the facilities reactivated and the abandoned service restored, even though the resumption by United of the transportation of gas from the Johnson Bayou Field will entail the purchase of gas from Continental at the legally established price. Undoubtedly, the continued purchase of gas has been ordered but only as an incident to regulating transportation or sale. This is no more than the Act authorizes and no more than United undertook to do when it sought and received certification for the service it sought to perform.[5]

After United had begun to purchase gas from the Johnson Bayou Field in 1953 and to transport it to markets in the State of Texas, United sought a certificate of public convenience and necessity authorizing the construction and use of the facilities it had built and the continued transportation of the Johnson Bayou gas. United then asserted that the public convenience and necessity required the issuance of such a certificate.[6]

---

[5] What we have said, of course, does not imply that the Commission has the power to compel initial purchases of gas. We reach only the question of the Commission's power under § 7 (b) to order reactivation of abandoned facilities and service.

[6] United's application for the certificate, docketed September 20, 1954, appears in FPC Docket No. G–2818, United Gas Pipe Line Company.

Both the construction and operation of the facilities and the *transportation* of gas by means thereof were found by the Commission to be required by the public convenience and necessity. United was found "able and willing . . . to perform the *service* . . ." for which it had volunteered.[7] A certificate was accordingly issued and formally accepted by United. United now wishes to abandon the express service it agreed to perform—the continued transportation of Johnson Bayou gas—without a § 7 (b) finding by the Commission "that the present or future public convenience or necessity permit[s] such abandonment." This is precisely what the Act forbids.

United claims that it does not need the Johnson Bayou gas to serve its customers and that the forced purchase of gas at prices set by Continental and approved by the Commission without regard to the prices at which United under contract or competition is bound to sell the gas deprives it of property without due process of law. In our view, these claims are premature. We do not hold that it would be inappropriate for the Commission to permit abandonment in this case if it is asked to do so and the necessary findings are made. We hold only that United has abandoned facilities and service without the consent of the Commission and that it must reactivate those facilities and restore the service until and unless the statutory consent is obtained. If United now resorts to the Commission, it will have every opportunity to present its economic and constitutional grounds for abandonment.

For the reasons herein stated, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*

---

[7] The Commission's complete order appears in Docket G–2818, *supra*, n. 6; an abbreviated version appears in 14 F. P. C. 582. (Emphasis added.)