**ALABAMA–TENNESSEE NATURAL GAS COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

No. 25862.

United States Court of Appeals
Fifth Circuit.

Aug. 4, 1969.

Rehearing Denied and Rehearing En Banc Denied Sept. 24, 1969.

Louis Flax, Stanley M. Morley, Francis H. Caskin, May, Shannon & Morley, Washington, D. C., for intervenor, City of Corinth.

Allan Freidson, Washington, D. C., William L. Sharp, Corinth, Miss., Reuben Goldberg, Washington, D. C., for petitioner.

Peter H. Schiff, Sol., Richard A. Solomon, Gen. Counsel, Israel Convisser, Atty., Federal Power Commission, Washington, D. C., for respondent.

Before JOHN R. BROWN, Chief Judge, THORNBERRY, Circuit Judge, and TAYLOR, District Judge.

TAYLOR, District Judge:

This is a proceeding to review Orders of the Federal Power Commission (Commission) issued November 30, 1967 and January 29, 1968. The November 30, 1967 Order directed Tennessee Gas Pipeline Company (TGP), an interstate natural gas pipeline company, to interconnect its facilities with the facilities of City of Corinth, Mississippi, (Corinth), and beginning February 1, 1970 sell natural gas to Corinth for distribution to its customers. The November 30 Order also denied the application of Alabama-Tennessee Natural Gas Company (A-T or Petitioner), an interstate natural gas pipeline company, and Corinth's present supplier of natural gas, for authority to construct additional lateral line capacity to sell increased volumes of gas to Corinth. The Order issued January 29, 1968 denied Petitioner's application for rehearing and stay. Petitioner asserts that the Commission exceeded its statutory powers by:

a. modifying and revoking past certificate authorizations to A-T;

b. failing to test its action according to Section 7(b) of the Natural Gas Act governing abandonment of certificated facilities and service;

c. misapplying Section 7(a) of the Act by ordering the construction of duplicate facilities to serve a market already adequately served; and

d. abrogating a contract which it had previously approved.

It is further urged by Petitioner that the Commission's exercise of power was not rationally based. Disagreeing with these contentions and being of the opinion that the Commission acted in the public interest, we affirm the Opinion and Orders of the Commission.

Petitioner is an interstate natural gas pipeline company which has Corinth among its purchasers for resale. The service contract between the two runs until February 1, 1970. Petitioner purchases its entire natural gas supply from TGP. It now receives the gas a short distance from Corinth, carries it three miles through its system and makes delivery to Corinth through a 3.5 inch diameter lateral pipeline 2.5 miles in length, which is no longer adequate to meet the growing needs of the city. For

a number of years Petitioner has been supplying Corinth with gas in excess of the maximum daily quantity of 3,850 Mcf specified in the contract and has been paid therefor in accordance with agreed demand and commodity charges. Corinth, having become disenchanted with Petitioner, whether rightly or wrongly, refused to execute a new service agreement providing for a greater maximum daily quantity and extending the contract beyond its 1970 expiration date. The present proceedings commenced when Alabama-Tennessee filed an application with the Commission for a certificate of public convenience and necessity authorizing construction of a 2.5 mile, 3.5 inch diameter pipeline, paralleling the one already in existence between Alabama-Tennessee and the city, upon condition that Corinth be required to enter into a new contract for increased maximum daily quantities and for an extended period. This proposed facility was estimated to cost something in excess of $42,000.00.

Corinth intervened in opposition to the application and thereafter filed an application, under Section 7(a) of the Natural Gas Act, 15 U.S.C. 717f(a), for an order directing Tennessee Gas to connect its facilities to those of Corinth and to sell Corinth the gas needed in excess of the 3,850 Mcf per day specified in its contract with Alabama-Tennessee until February 1, 1970, and 6,550 Mcf per day (the city's estimated total requirements) thereafter. The cost to the city of the physical connection was estimated to be about $100,000 and the resultant saving in gas costs would be, it was claimed, $100,000 annually when Tennessee Gas would be supplying Corinth's full requirements.

On motion of Petitioner, the two applications were consolidated. After hearings and briefing, the examiner, save in respects not here at issue, denied Petitioner's application and granted Corinth's on April 28, 1967. The Commission, with some modifications, concurred. The Commission found that the substitution of Tennessee Gas as its supplier would result in a 20-year saving to Corinth of about $2,000,000.00. It was also found that the loss of sales to Corinth would be more than compensated for by normal growth in Alabama-Tennessee's sales to others and that the detriment to Alabama-Tennessee would not be serious. Thus, in 1964, Alabama-Tennessee's peak-day load was 67,841 Mcf and its annual sales were 11,261,946 Mcf. The estimate for 1966 was a peak of 89,710 Mcf and an annual volume of 12,914,200 Mcf. Both these sets of figures include sales to Corinth. Even without sales to Corinth, it was estimated that Alabama-Tennessee's 1970 peak would be 96,340 Mcf and its volume 16,195,400 Mcf, a substantial increase over the actual and estimated past. The Commission further found that the unamortized cost of the existing Corinth lateral pipeline and metering facilities would be approximately $40,000 by February 1, 1970, the contract termination date. Of this amount 60% would be the cost of meter stations which would have some salvage value. The balance, the Commission held, could be written off over a period of years so that the adverse effect on Alabama-Tennessee would be negligible.

Alabama-Tennessee's primary contention is that the Commission's approval of Tennessee Gas as the supplier for Corinth, with the resultant termination of sales by Alabama-Tennessee to Corinth, constitutes an invalid revocation of its certificate of public convenience and necessity authorizing sales by it to Corinth. The certificates upon which Alabama-Tennessee relies do authorize it to sell gas to the city of Corinth which distributes gas locally, but this authorization in no way assures Alabama-Tennessee that Corinth would purchase the gas for the Commission has no authority to require a local distributor to contract for, purchase, or accept delivery of natural gas. Michigan-Wisconsin Pipe Line Company, 6 FPC 1,

34 (1947), affirmed *sub nom.* Panhandle Eastern Pipe Line Co. v. F. P. C., 169 F.2d 881 (C.A.D.C.), certiorari denied, 335 U.S. 854, 69 S.Ct. 81, 94 L.Ed. 402 (1948). Such assurance lay only in Corinth's willingness to purchase gas under a long term contract or otherwise. Under these circumstances pipeline companies have generally attempted to obtain long term contracts with distribution companies, and it is noted that if gas could be obtained from a local intrastate source the Commission has no power at all to prevent the separation of the purchaser. What the Commission did in this case was to grant a certificate to TGP and denied an application for a certificate for expanded service to A-T. The proceedings in no way pertained to certificates already granted to A-T. The power to grant additional certificates for an area already serviced is clearly granted by 7(g), which provides in part that:

"Nothing contained in this section shall be construed as a limitation upon the power of the Commission to grant certificates of public convenience and necessity for service of an area already being served by another natural gas company."

The Commission could at the termination of a long term contract require the distributor to continue dealing with the original supplier by refusing to certificate a substitute supplier if the only alternative gas supply is from another interstate pipeline. This possibility, however, could in no way convert a certificate authorizing sales to a willing customer into a vested right under the Natural Gas Act to continue serving a particular customer indefinitely. A certificate of public convenience and necessity is not a grant of a monopolistic position in a particular area. The courts have on occasion recognized that the above quoted language of Section 7(g) makes clear that competition from markets is contemplated under the Act. Panhandle Eastern Pipe Line Co. v. F. P. C., supra at 884, 69 S.Ct. 81; Home Gas Company v. F. P. C., 97 U.S.App.D.C. 300, 231 F.2d 253, 257, certiorari denied, 352 U.S. 831, 77 S.Ct. 45, 1 L.Ed.2d 51 (1956); Cincinnati Gas & Electric Co. v. F. P. C., 389 F.2d 272 (CA6, 1968), petition for certiorari pending, 393 U.S. 826, 89 S. Ct. 89, 21 L.Ed.2d 97. The Fourth Circuit has recently said that the "Natural Gas Act does not expressly limit a second supplier to incremental sales, and neither the commission nor the courts have imposed such a rigid exclusion. The Act's primary criterion for certification is the public interest." Atlantic Seaboard Corp. v. F. P. C., 397 F.2d 753, (CA4, 1968). A-T's contention in this regard is without merit.

As to the assertion that the Commission should have tested its action according to the standards of Section 7(b) the Commission said:

"A-T contends that the issue of the loss of Corinth as a customer should be governed by the abandonment principles of Section 7(b) which requires a hearing and finding that 'public convenience or necessity permit such abandonment.' This position that a customer seeking a new source of supply is analogous to an abandonment proceeding is a distortion of the purposes of Section 7(b) which is designed to protect the consumer's right to a continuing source of supply. It is not designed to bind the customer to any given source of supply.

"A-T's reliance on Michigan Consolidated Gas Co. v. F. P. C., 382 F.2d 204 [108 U.S.App.D.C. 409, 283 F.2d 204] (CADC 1960), *cert. den.* [Panhandle Eastern Pipe Line Co. v. Michigan Consolidated Gas Co.] 364 U.S. 913 [81 S.Ct. 276, 5 L.Ed.2d 227], in support of its thesis that this must be considered an abandonment is not well taken. The consideration and emphasis in an abandonment case, as the court there indicated, is the impact *on the party being abandoned.* In the instant case the party being abandoned —more correctly, separated; albeit at its own request—is Corinth, not the other customers at A-T. The other customers will continue to be served.

Hence, even if the Commission were to consider that Corinth's application is, as A-T contends, subject to Section 7(b), it would be constrained to determine the impact upon the ultimate consumers abandoned by (or separated from) A-T—to wit, the Corinth citizenry. When viewed in such light, the public convenience and necessity loom largely in favor of allowing the consumers access to lower priced gas."

We agree with the Commission's construction of Section 7(b).

Any reliance which A-T places on United Gas Pipe Line Co. v. F. P. C., 385 U.S. 83, 87 S.Ct. 265, 17 L.Ed.2d 181 (1966), is ill-founded. In that case, United was certified to construct a pipeline to a producing field whose operators contracted to sell to United. United did construct the pipeline and then abandoned it. Thus the *United* case, unlike this case, concerned an abandonment by the unilateral decision of a pipeline company over which the Commission had jurisdiction, rather than a new connection to a local distributor as in this case. The Supreme Court said, in part, "We hold only that United has abandoned facilities and service without the consent of the Commission and that it must reactivate those facilities and restore the service until and unless the statutory consent is obtained." As the Commission observed, Section 7(b) is "designed to protect the consumer's right to a continuing source of supply. It is not designed to bind the consumer to any given source of supply." The fact remains that if Corinth chose to utilize another form of energy it could have terminated A-T's service without the Commission's consent.

A-T's contention that Section 7(a) was never intended to enable a distribu-

tor of natural gas to displace a certificated supplier which has fully and adequately performed its authorized function is likewise without merit.[1] A-T's certificate of authority to serve Corinth was not revoked. Section 7(g) makes clear the Commission's power to grant more than one certificate of public convenience and necessity for one service area.

Section 7(e) directs the Commission to grant such certificates to any qualified applicant. Also, the Commission has the power to direct extension of services by a certificated company under 7(a). With these factors in mind, the Commission was well within its power to grant a certificate of public convenience and necessity to TGP to serve Corinth or to direct TGP to make connection with Corinth's pipeline. As was said in Home Gas Co. v. F. P. C., 97 U.S.App. D.C. 300, 231 F.2d 253 (1955):

"'* * *. Petitioners contend that, assuming the Commission has power under the Act, 15 U.S.C.A. § 717f(a), (e) and (g), to grant a certificate of public convenience and necessity to a second supplier for service to an area already being served, the Commission has no power to require such service by order pursuant to § 717f(a) * * *.

"To uphold petitioner's contentions would in effect force us to consider the above noted sections as being mutually exclusive. This we cannot do. Indeed, we find them complementary. No basis exists in the legislative history of the Act, and certainly none in the plain language of the text, for the creation of a third limitation on § 717f(a), as petitioners urge, namely, where the area involved is already

---

1. Section 717f(a). "Whenever the Commission * * * finds such action necessary or desirable in the public interest, it may by order direct a natural-gas company to extend or improve its transportation facilities, to establish physical connection of its transportation facilities with the facilities of, and sell natural gas to, any person or municipality engaged or legally authorized to engage in the local distribution of natural or artificial gas to the public * * * if the Commission finds that no undue burden will be placed upon natural-gas company thereby * *."

being served by a natural gas company." pp. 257–258.

■ Petitioner A-T also asserts that the Commission had no power to abrogate the contract between A-T and TGP which it had previously approved. This contract became effective on May 10, 1966 for a term expiring November 1, 1986 and was approved by the Commission with knowledge that 4700 Mcf per day was included for Corinth. What has been heretofore said must indicate our holding with reference to this contention of A-T. A contract between A-T and TGP, even though approved by the Commission, could not have the effect of creating a monopoly for A-T or giving a vested right to A-T to perpetually serve Corinth. And certainly the contract could not have the effect of abrogating the Natural Gas Act and the power of the Commission to serve the public interest. As the examiner pointed out, when A-T made the contract with TGP it knew "that the sales contract with Corinth expired in 1970" and A-T "cannot impose additional obligations on a customer simply by obligating itself to a supplier."

■ Petitioner's remaining points actually go to the question as to whether or not the Commission's exercise of power was (a) rationally based, and (b) supported by substantial evidence. The facts are not disputed. The substitution of TGP for A-T will substantially reduce Corinth's cost; A-T's resultant loss of volume will be more than offset by normal growth; and the undepreciated cost of its facilities that will be rendered useless by the substitution will not only be minuscule but amortizable over a period of years as well. Both the examiner and the Commission found that the adverse effect on Alabama-Tennessee and its remaining customers would be negligible. A-T, without disputing the basic facts, criticizes the Commission's alleged failure to fully evaluate the detriment the loss of Corinth would cause petitioner. It contends that a proper consideration of loss of profits must take into account the cost of new facilities needed to serve the growth that will offset the lost volumes. Petitioner, however, has supplied no specific information as to such costs nor as to how such costs, if any, would compare with the cost of the facilities for which A-T sought and was denied a certificate. Without this information resultant detriment may not be assumed. Lynchburg Gas Company v. F. P. C., 119 U.S.App. D.C. 23, 336 F.2d 942, 947–948 (1964). See also Atlantic Seaboard Corporation v. F. P. C., supra; Cincinnati Gas & Electric Co. v. F. P. C., supra. A-T is really arguing the undesirable fact that it and perhaps its other customers would be better off with Corinth as a customer than without it, but as pointed out in the Lynchburg and Atlantic Seaboard cases, supra, this is not the decisive test but merely a factor. As noted by the Commission, to permit this consideration to be controlling "would inevitably bind a customer to its existing supplier, thus effectively preclude the realization of the fruits of competition".

■ A-T also complains that the Commission rejected out of hand the alternative of a "transportation" or "delivery for the account of" arrangement under which A-T would make delivery of the gas for the account of Tennessee Gas and charge a transportation fee therefor. In this connection the Commission correctly held:

"* * * Were A-T [Alabama-Tennessee] to transport the gas, the charges would either have to be allocated directly to Corinth, in which event they would exceed the costs of transportation via a Corinth built lateral, or they would have to be rolled into A-T's costs for the entire system. This latter alternative would in effect not only require other A-T customers to bear the burden of some share of the transportation charges, but would result in Corinth's share exceeding its costs of transport via a Corinth owned

lateral. Accordingly, considered on its own merits or comparatively with these alternatives, the proposal which we are certificating results in substantial savings to Corinth and is in the public interest."

A-T also faults the Commission for dismissing its rate zone alternative which would result in a reduction in Corinth's rates and an increase in the rates of customers which are more remote from the source of supply. It appears from the record that this proposal came on the last day of the hearing and no evidence was introduced or sought to be introduced in this regard. The Commission correctly pointed out that a change in the rate structure could not be made without a full-blown rate case with notice and opportunity to intervene to all customers and interested parties not represented in this case. This would result in extensive delay which might cause Corinth to suffer from an insufficient gas supply for the coming season.

From what has heretofore been said it is apparent that the Commission's orders are supported by substantial evidence and had a plainly rational basis. Its decision as to where the public interest lay was an exercise of regulatory authority entrusted by Congress to its informed judgment. Permain Basin Area Rate Cases, 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968), and Atlantic Seaboard Corp. v. F. P. C., supra.

Accordingly, the opinion and orders of the Commission are

Affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.