**TEXAS OIL & GAS CORPORATION,**
Plaintiff-Appellant,

v.

**VALLEY GAS TRANSMISSION, INC.
and the Federal Energy Regulatory
Commission, Defendants-Appellees.**

No. 79–2053.

United States Court of Appeals,
Fifth Circuit.

Dec. 14, 1979.

Charles R. Porter, Jr., Corpus Christi, Tex., Robert M. Martin, Jr., Dallas, Tex., for plaintiff-appellant.

Otis W. Carroll, Jr., Houston, Tex., for Valley Gas Transmission.

Joshua Z. Rokach, Atty., Fed. Energy Reg. Comm., Washington, D. C., for Federal Energy Regulatory Commission.

Before CHARLES CLARK, RONEY and GARZA, Circuit Judges.

GARZA, Circuit Judge:

The issue presently before the Court is whether the Federal Energy Regulatory Commission [FERC] has primary jurisdiction regarding the abandonment of a certificate of public convenience and necessity when the natural gas fields covered by that certificate had remained unused for fifteen years and the present leaseholder has no connection with the original certificate holders. The District Court resolved this issue in the affirmative. We concur with the decision of the District Court.

In 1960, Blue Oil Gas Company and others contracted to sell natural gas to Valley Gas Transmission, Inc. [VGT]. Pursuant to that contract, the Federal Power Commission [FPC], now the FERC, issued a certificate of public convenience and necessity to Christie, Mitchell & Mitchell Company [Christie], the owner of oil, gas and mineral leases covering the land described in that contract. The FPC certificate authorized the sale of natural gas in interstate commerce to VGT.

In 1962, production of gas on the acreage in question ceased, and the leases of Christie terminated sometime thereafter. In 1974, Texas Oil & Gas Corporation [TXO] acquired leases on certain parts of the land that had been included in the 1960 certificate of public convenience. Two of TXO's gas wells lie outside of that acreage. Natural gas had been rediscovered by TXO in the same field by 1978. VGT then claimed that TXO was required under the 1960 certificate to deliver natural gas from its well to VGT for resale in interstate commerce. The FERC contended that once gas is dedicated in interstate commerce, it cannot be withdrawn without its consent. TXO filed a suit in federal district court seeking a declaratory judgment that its oil and gas were free and clear of any dedication to interstate commerce and asking that its title to the leaseholds be quieted against the claims of VGT. TXO contended that it was not bound by the 1960 certificate of public convenience since 15 years of nonproduction had elapsed before TXO discovered natural gas and because it was not a party to the 1960 contract.

Subsequent to TXO's filing, VGT filed a proceeding before the FERC under the 1960 docket number. Shortly before oral argument was presented in this case, the FERC issued an Order on November 8, 1979, enforcing the obligation under the 1960 certificate for any natural gas produced prior to December 1, 1978. Pursuant to the Natural Gas Policy Act of 1978, 15 U.S.C. §§ 3301–3432, the FERC held that any sales of natural gas made on or after December 1, 1978, were not subject to the requirements of the 1960 certificate. Following the issuance of this Order, TXO filed in this court a Motion to Stay the above Order of the FERC.

It is clear that once the initiation of interstate service pursuant to a certificate of public convenience and necessity has begun, all fields subject to that certificate are dedicated to interstate commerce. *See California v. Southland Royalty Company*, 436 U.S. 519, 525, 98 S.Ct. 1955, 56 L.Ed.2d 505 (1978). The means to terminate such a dedication are found in 15 U.S.C. § 717f(b) of The Natural Gas Act, 15 U.S.C. §§ 717–717z. That section states:

(b) No natural-gas company shall abandon all or any portion of its facilities subject to the jurisdiction of the Commission, or any service rendered by means of such facilities, without the permission and approval of the Commission first had and obtained, after due hearing, and a finding by the Commission that the available supply of natural gas is depleted to the extent that the continuance of service is unwarranted, or that the present or future public convenience or necessity permit such abandonment.

TXO contends, however, that § 717f(b) is inapplicable and that the FERC does not have jurisdiction in this case, since TXO is not a successor to the original certificate and the original gas supply was depleted in 1962. TXO contends that if anyone should seek an abandonment, it is Christie and not TXO. TXO also raises the issue that on its face the certificate terminated with the cessation of operation by Christie.[1] TXO now contends that such an automatic termination renders the abandonment issue moot.

The arguments of TXO are foreclosed by a number of United States Supreme Court decisions in this area. Once natural gas is dedicated to interstate commerce, that supply may not be withdrawn from such interstate movement without the approval of the Commission. See *Atlantic Refining Company v. Public Service Commission of New York*, 360 U.S. 378, 389, 79 S.Ct. 1246, 3 L.Ed.2d 1312 (1959). Over a decade ago, the Supreme Court, dealing with a case involving a company's voluntary abandonment of natural gas facilities, held that the statutory necessity of prior Commission approval under § 717f(b) could not be evaded and that the company had to reactivate its abandoned facilities until a statutory consent was obtained. *United Gas Pipe Line Company v. Federal Power Commission*, 385 U.S. 83, 89, 91, 87 S.Ct. 265, 17 L.Ed.2d 181 (1966). In *California v. Southland Royalty Company*, 436 U.S. 519, 98 S.Ct. 1955, 56 L.Ed.2d 505 (1978), the Court, interpreting a certificate of unlimited duration, held that the issuance of the certificate created a duty to serve interstate commerce until an abandonment authorization was obtained. *Id.* at 526, 98 S.Ct. 1955. Similarly, in *United Gas Pipe Line Company v. McCombs*, —— U.S. ——, 99 S.Ct. 2461, 61 L.Ed.2d 54 (1979), the Court was faced with an attempt to sell natural gas on an intrastate basis which had been discovered on the same land covered by a certificate of public convenience but at a lower depth. The Court in *McCombs* held that there exists no exception to the language of § 717f(b). *Id.* at ——, 99 S.Ct. 2461.[2]

The Tenth Circuit in *Texas Oil & Gas Corporation v. Michigan Wisconsin Pipe Line Company*, 601 F.2d 1144 (10th Cir. 1979), dealt with a situation which involved TXO that is extremely similar to the present case. Shell Oil Company had been issued a certificate of public convenience and had produced and delivered gas inter-

---

1. The order granting the certificate in 1960 provided that:

   The certificates are not transferrable and shall be effective only so long as Applicants continue the acts or operations hereby authorized in accordance with the provisions of the Natural Gas Act and the applicable rules, regulations and orders of the Commission.

2. 15 U.S.C. § 3301(18)(B)(iii) provides an exception to the dedication to interstate gas of:

   (iii) natural gas which, but for this clause, would be committed or dedicated to interstate commerce under subparagraph (A)(ii) [any natural gas required to be sold in interstate commerce under the terms of any contract or any certificate or provision of the Natural Gas Act] by reason of the action of any person (including any successor in interest thereof, other than by means of any re-

version of a leasehold interest), if on May 31, 1978—

   (I) neither that person, nor any affiliate thereof, had any right to explore for, develop, produce, or sell such natural gas; and

   (II) such natural gas was not being sold in interstate commerce (within the meaning of the Natural Gas Act) for resale . . .

It is apparent that this section of the Natural Gas Policy Act will affect application of the decisions in *Southland* and *McCombs*. See H.R.Con.Rep.No.95–1752, 95th Cong., 2d Sess., *reprinted in* [1978] *U.S.Code Cong. & Admin. News* pp. 9161, 9165–66. Nonetheless, the initial interpretation of the Natural Gas Policy Act, and any application thereof to the present circumstances, should be made by the FERC.

state from 1962 until 1969 when it abandoned the well. Shell never applied for Commission approval on the abandonment. A few years later, TXO obtained leases on the same property and entered into a gas purchase agreement with an intrastate pipeline company. The Tenth Circuit, in dismissing the action in deference to the primary jurisdiction of the FERC, held that the federal obligation survives the lease, and it can be imposed upon one who does not hold the interstate certificate. *Id.* at 1146.

The present situation is governed by the rules and decisions of the FERC. Such deference not only accedes to the mandates of the statute, but also insures that certainty and reliability will exist in the regulatory scheme. The present situation involves a dispute as to whether a subsequent leaseholder, not related to the original certificate holders, is required to seek Commission abandonment after 15 years of nonproduction.[3] This is a matter within the primary jurisdiction of the FERC, and the decision of the District Court is affirmed.

Since we hold that the FERC does possess jurisdiction, TXO's Motion to Stay the Order of the FERC is denied. The government concedes, however, that TXO has a right to seek a rehearing before the FERC.[4] The issues of dedication and abandonment as well as the applicability of the Natural Gas Policy Act to the instant circumstances are matters which TXO can litigate in a rehearing before the Commission. The Court will thus allow TXO to seek a rehearing before the FERC, if it so desires, in order to present its arguments in the appropriate forum.

AFFIRMED.

---

**3.** An additional dispute concerns the language in the original order of the Commission in granting the certificate, which is cited in footnote 1. Although it is not clear, this issue might not have been raised in the trial court, and, if so, this Court may not now consider such an issue on appeal. *See Gerasta v. Hibernia National Bank,* 575 F.2d 580, 585 (5th Cir. 1978). Nonetheless, the FERC issued the 1960 Order, and it should be the entity to make the initial decision concerning its own language.

**4.** The Senior Vice President of TXO, John R. Morgan, wrote a letter to the FERC on November 1, 1978, after the petition for Order Enforc-

ing Certification Obligation had been filed by VGT. The letter stated that TXO did not find it appropriate to make an appearance and listed four reasons why the petition should be dismissed. Counsel for the FERC conceded at oral argument that the foregoing letter from TXO was treated as an answer to the petition. In light of this, it was the FERC's position at oral argument that TXO had a right to seek a rehearing of the FERC's Order of November 8, 1979.