PANHANDLE EASTERN PIPE LINE
COMPANY, Petitioner,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent,

Indiana Gas Company, Inc., United Gas
Pipe Line Company, Laclede Gas Company, Mississippi River Transmission
Corporation, Consumers Power Company, Northern Indiana Public Service
Company, Texas Eastern Transmission
Corporation, Intervenors.

TRUNKLINE GAS
COMPANY, Petitioner,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent,

Indiana Gas Company, Inc., United Gas
Pipe Line Company, Laclede Gas Company, Mississippi River Transmission
Corporation, Consumers Power Company, Northern Indiana Public Service
Company, Texas Eastern Transmission
Corporation, Intervenors.

INDIANA GAS COMPANY,
INC., Petitioner,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent,

United Gas Pipe Line Company, Laclede
Gas Company, Mississippi River Transmission Corporation, Consumers Power
Company, Northern Indiana Public
Service Company, Texas Eastern Transmission Corporation, Trunkline Gas
Company, Panhandle Eastern Pipe
Line Company, Intervenors.

Nos. 85–1389, 85–1390 and 85–1395.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 7, 1986.

Decided Oct. 17, 1986.

Raymond N. Shibley, with whom Patrick
J. Whittle, Washington, D.C., was on the
brief for petitioners, Panhandle Eastern
Pipe Line Co., et al., in Nos. 85–1389 and
85–1390 and intervenors in No. 85–1395.

J. Richard Tiano, with whom Mary Ann
Walker, Washington, D.C., and Daniel W.
McGill, Indianapolis, Ind., were on the brief
for petitioner, Indiana Gas Co., Inc., in No.
85–1395 and intervenor in Nos. 85–1389 and
85–1390.

Joel M. Cockrell, Atty., F.E.R.C., with
whom Jerome M. Feit, Sol., F.E.R.C., Washington, D.C., was on the brief for respondent in Nos. 85–1389, 85–1390 and 85–1395.

Roy R. Robertson, Jr., Birmingham, Ala.,
with whom Paul E. Goldstein was on the
brief for intervenor, Mississippi River
Transmission Corp., in Nos. 85–1389, 85–
1390 and 85–1395.

Kenneth J. Neises, Washington, D.C., was on the brief for intervenor, Laclede Gas Co., in Nos. 85–1389, 85–1390 and 85–1395.

Jeron Stevens, I. Jay Golub and Phillip D. Endom, Houston, Tex., entered appearances for intervenor, United Gas Pipe Line Co., in Nos. 85–1389, 85–1390 and 85–1395.

William Warfield Ross and Shira D. Modell, Washington, D.C., entered appearances for intervenor, Consumers Power Co., in Nos. 85–1389, 85–1390 and 85–1395.

Peter L. Hatton, Hammond, Ind., entered an appearance for intervenor, Northern Indiana Public Service Co., in Nos. 85–1389, 85–1390 and 85–1395.

Bolivar C. Andrews and Carl W. Ulrich, Houston, Tex., entered appearances for intervenor, Texas Eastern Transmission Co., in Nos. 85–1389, 85–1390 and 85–1395.

Before GINSBURG, BORK and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

Petitioners challenge an order of the Federal Energy Regulatory Commission dismissing on jurisdictional grounds an application for authorization to abandon certain purchases of natural gas. Because the Supreme Court has held that the purchase and transportation of natural gas is a "service" within the meaning of section 7(b) of the Natural Gas Act,[1] we conclude that the Commission's decision that it did not have jurisdiction of the application pursuant to that provision was not reasonable. We therefore grant the petitions for review, reverse the Commission's order, and remand for further proceedings.

## I.

Petitioner Trunkline Gas Company ("Trunkline") and intervenor Mississippi River Transmission Corporation ("MRT") are natural gas companies within the meaning of the Natural Gas Act and are subject to the jurisdiction of the Commission. In 1959, the Commission issued a certificate authorizing Trunkline to enlarge its existing facilities for the purpose of initiating natural gas service to MRT and several other new customers. *See Trunkline Gas Co.,* 24 F.P.C. 1020 (1960). In the same consolidated proceeding, the Commission authorized MRT to construct and operate approximately ninety-three miles of pipeline through which it would transport and sell the natural gas purchased from Trunkline. *Id.* at 1022, 1030. Trunkline and MRT then entered into a series of contracts for the sale of gas by Trunkline to MRT. The last contract provided that service after the term specified was renewable on an annual basis unless cancelled by either party on eighteen months' notice. In October 1983, MRT gave notice to Trunkline of its intention to cancel the contract effective May 1, 1985, and asked Trunkline to seek authorization from the Commission to abandon its sale of gas to MRT. Trunkline, however, did not seek abandonment authorization from the Commission.

On April 12, 1984, MRT filed an application with the Commission requesting "an order permitting and approving the abandonment of service as a result of the termination by its terms of the contract to purchase natural gas from Trunkline." Joint Appendix ("J.A.") at 7. MRT stated that it did not seek to abandon any of its certificated facilities but noted that "the character of the use of the facilities ... will change by virtue of the cessation of purchases of gas from Trunkline." *Id.* at 10.

---

**1.** Section 7(b) of the Natural Gas Act provides:

No natural gas company shall abandon all or any portion of its facilities subject to the jurisdiction of the Commission, or any service rendered by means of such facilities, without the permission and approval of the Commission first had and obtained, after due hearing, and a finding by the Commission that the available supply of natural gas is depleted to the extent that the continuance of service is unwarranted, or that the present or future public convenience or necessity permit such abandonment.

15 U.S.C. § 717f(b) (1982).

On February 19, 1985, the Commission dismissed MRT's application and held that it did not have jurisdiction pursuant to section 7(b) because

MRT request[ed] permission to abandon its purchases of gas from Trunkline, but [did] not seek abandonment of any jurisdictional facilities used in conjunction with those purchases or of any jurisdictional services.... Under these circumstances, the termination of the contract and MRT's obligation to purchase thereunder do not *per se* constitute any change in MRT's service or abandonment of MRT's facilities for which prior Commission authorization is required.

*Mississippi River Transmission Corp.*, 30 F.E.R.C. (CCH) ¶ 61,155, at 61,327 (Feb. 19, 1985) (Order Dismissing Application for Abandonment).

Petitioners Panhandle Eastern Pipe Line Company, Trunkline, and Indiana Gas Company, Inc. petitioned the Commission for rehearing. On April 29, 1985, the Commission denied rehearing. *Mississippi River Transmission Corp.*, 31 F.E.R.C. (CCH) ¶ 61,100 (Apr. 29, 1985). These petitions for review followed.

## II.

One of the purposes of the Natural Gas Act is to assure an adequate and reliable supply of natural gas. *California v. Southland Royalty Co.*, 436 U.S. 519, 523, 98 S.Ct. 1955, 1957, 56 L.Ed.2d 505 (1978); *Sunray-Mid Continent Oil Co. v. FPC*, 364 U.S. 137, 147, 151–54, 80 S.Ct. 1392, 1400–02, 4 L.Ed.2d 1623 (1960). The Act provides that natural gas companies must obtain a certificate of public convenience and necessity from the Commission before they will be authorized to sell or transport gas in interstate commerce. 15 U.S.C. § 717f(c) (1982). The Act further provides that after a certificate has issued, "[n]o natural gas company shall abandon all or any portion of its facilities subject to the jurisdiction of the Commission, or any ser-

vice rendered by means of such facilities, without the permission and approval of the Commission." 15 U.S.C. § 717f(b) (1982).[2] This provision creates a continuing regulatory obligation, irrespective of private contractual arrangements, not to abandon any certificated obligations before obtaining authorization from the Commission to do so. *See United Gas Pipe Line Co. v. McCombs*, 442 U.S. 529, 99 S.Ct. 2461, 61 L.Ed.2d 54 (1979); *California v. Southland Royalty Co.*, 436 U.S. at 525, 98 S.Ct. at 1958.

### A.

The issue presented here is whether MRT's discontinuance of purchases from Trunkline is an abandonment of its certificated "facilities ... or any service rendered by means of such facilities," triggering the Commission's jurisdiction to entertain MRT's application. This issue is not difficult. In *United Gas Pipe Line Co. v. FPC*, 385 U.S. 83, 87 S.Ct. 265, 17 L.Ed.2d 181 (1966), the Supreme Court defined those "facilities" and "services" within the jurisdiction of the Commission and determined that the cessation of purchases may fall within those definitions. There, petitioner United Gas Pipe Line Co. ("United") contracted to buy gas produced by respondent Continental Oil Co. ("Continental") from the Johnson Bayou Field in Louisiana. Pursuant to a certificate issued by the Commission, United constructed facilities and transported the gas from the field. In 1962, Continental elected to terminate the contract and filed for and obtained a rate increase over United's protest. United then ceased purchasing gas from the Johnson Bayou Field and closed down its Bayou Field facilities. The Commission found that United's actions were an abandonment of facilities and the service rendered by those facilities within the meaning of section 7(b) and ordered United to renew operation of its Johnson Bayou Field facilities. The Supreme Court affirmed, holding that

---

**2.** As defined by this court, "[a]n 'abandonment' within the meaning of section 7(b) occurs whenever a natural gas company permanently re-

duces a significant portion of a particular service." *Reynolds Metal Co. v. FPC*, 534 F.2d 379, 384 (D.C.Cir.1976).

"United's refusal to continue receiving gas from the Johnson Bayou Field constituted an abandonment of 'facilities' and a 'service' to which § 7(b) applies." 385 U.S. at 86, 87 S.Ct. at 267.

The Court noted that the Commission's interest in asserting jurisdiction flowed from its responsibility "to assure that gas once dedicated to the interstate market will continue to be available to that market so long as the public interest demands." 385 U.S. at 88, 87 S.Ct. at 268. The Court then defined the facilities subject to the jurisdiction of the Commission as those "required for the interstate transportation of natural gas and for the interstate sale of gas for resale to the ultimate consumer," *id.* at 87, 87 S.Ct. at 268, and concluded that United's facilities were within the Commission's jurisdiction and that United had "abandoned" these facilities because they were no longer in use. *Id.* at 88, 87 S.Ct. at 268. The Court then rejected United's argument that it had not abandoned a service because "it [was] free at any time to abandon the interstate transportation of gas from the Johnson Bayou Field, and to decide for itself wholly apart from the Commission what gas it [would] continue to transport." *Id.* The Court concluded that "it would seem beyond argument" that "any service" would include "both transportation and sale," and held that "[i]t could not be more clear that United here abandoned a 'service,' *the taking* of Johnson Bayou Field gas *and its transportation* in interstate commerce." *Id.* at 87–89, 87 S.Ct. at 268 (emphasis added).

We find the holding in *United*—that the cessation of the purchase and transportation of gas from a particular source is an abandonment—to be dispositive of the issue presented here.[3] In 1959, the Commission issued a certificate to MRT to construct and operate a pipeline through which it would transport the gas sold to it by Trunkline. MRT has ceased purchasing and transporting the gas it received from Trunkline. Thus, MRT has abandoned a "service" within the meaning of section 7(b) because it has ceased "taking" and "transporting" the gas that it previously purchased pursuant to its contract with Trunkline and, according to the clear holding in *United*, the Commission has jurisdiction pursuant to section 7(b) to entertain MRT's application.

In its order denying rehearing the Commission attempted to distinguish *United* on the ground that "no abandonment of facilities or service is proposed by MRT or has taken place." 31 F.E.R.C. (CCH) at 61,202. As support for this proposition, the Commission relied upon MRT's statement that it did not seek to abandon any facilities, and upon the Commission's previous conclusion that "MRT requests permission to abandon *its purchases* of gas from Trunkline, but does not seek abandonment of any jurisdictional facilities used in conjunction with those purchases or of any jurisdictional services." *Id.* (emphasis in original). Neither supports the Commission's position. These statements are not relevant to the dispositive issue of whether a "purchase" can be a certificated service, and they do not distinguish the Supreme Court's holding in *United* that a pipeline's refusal to continue receiving and transporting gas *from a particular source* is an abandonment for purposes of section 7(b). *See* 385 U.S. at 86, 87 S.Ct. at 267.

In its brief on appeal, the Commission attempts to explain its statement that MRT has not abandoned any "service" by arguing that the relevant services are those provided by MRT to its downstream customers. *See* Brief of Respondent at 9. This certainly does not serve to distinguish the *United* case. Instead, the argument simply ignores the holding by the Court that the taking and transportation of natural gas is the relevant service for purposes

---

3. Were this a case of first impression, we might be inclined to agree with the Commission. It would seem that the *identity* of the seller would be a matter to be determined by the parties through contractual arrangements and that the *amount* of gas flowing through interstate commerce would be the matter of concern to the Commission. Because we conclude, however, that the *United* case and prior Commission decisions govern this petition, we cannot so hold.

of this analysis. Further, the Court specifically rejected United's argument that it did not need the Johnson Bayou gas to serve its customers. *See* 385 U.S. at 91, 87 S.Ct. at 270. Thus, the Commission's attempt to distinguish *United* fails.[4]

### B.

The conclusion we reach today is also fully consistent with the Commission's interpretation of the *United* holding as explained in its own past decisions. The Commission's failure adequately to explain its departure from this precedent provides an additional ground for reversal. *See Airmark Corp. v. FAA,* 758 F.2d 685, 692 (D.C.Cir.1985); *United Municipal Distributors Group v. FERC,* 732 F.2d 202, 210 (D.C.Cir.1984). First, the Commission does not even attempt to explain its departure from its position in *United* that it had jurisdiction over the cessation of purchases of natural gas from a particular source. Moreover, the Commission has taken the same position in *United Gas Pipe Line Co.,* 22 F.E.R.C. (CCH) ¶ 61,144 (Feb. 10, 1983) (*United Gas* ), and in *Mountain Fuel Supply Co.,* 24 F.E.R.C. (CCH) ¶ 61,120 (July 22, 1983).

In *United Gas,* Natural Gas Pipeline Co. ("Natural") elected to terminate its contract to purchase gas from United Gas. United Gas then filed an application with the Commission to abandon these sales of gas. At about the same time, United Gas also filed an application with the Commission for, and was granted, permission to include a minimum bill provision in its tariff. Natural then moved in the abandonment proceeding for a declaratory order that it was authorized to abandon the purchases that it would be required to make under the minimum bill provision as of the date that its contract with United Gas was cancelled. The Commission noted that "even a fixed term contract does not permit service to be abandoned at the end of the term unless the Commission has granted express approval," 22 F.E.R.C. (CCH) at 61,233 (citing *United Gas Pipe Line Co. v. FPC,* 385 U.S. 83, 87 S.Ct. 265, 17 L.Ed.2d 181 (1966); *Sunray Mid-Continental Oil Co. v. FPC,* 364 U.S. 137, 80 S.Ct. 1392, 4 L.Ed.2d 1623 (1960)), and rejected Natural's application, holding that "United ha[d] an obligation under section 7(b) to tender and Natural ha[d] an obligation to receive natural gas until abandonment authorization [was] granted." *Id.* The Commission has attempted to distinguish this decision by stating that "to the extent a view of *United* contrary to the instant order might be implied by our earlier decision in [*United Gas* ], that earlier reliance on *United* was misplaced," 31 F.E.R.C. (CCH) at 61,203 n. 4, and by arguing that the Commission had jurisdiction of Natural's purchase abandonment application as incidental to its decision on United Gas' sale abandonment application. *Id.* With respect to the former,

---

4. MRT maintains that this case is controlled by *Alabama-Tennessee Natural Gas Co. v. FPC,* 417 F.2d 511 (5th Cir.1969), *cert. denied,* 397 U.S. 917, 90 S.Ct. 923, 25 L.Ed.2d 98 (1970), rather than by the *United* case. This contention is without merit. In *Alabama-Tennessee,* the Commission issued an order directing Tennessee Gas Pipeline Co. to begin selling natural gas to the City of Corinth and denying the application of Alabama-Tennessee, the then current supplier for Corinth, to expand its facilities to sell increased volumes of gas to Corinth. Alabama-Tennessee argued that § 7(b) was applicable to the Commission's order because the City was required to seek authorization to abandon its purchases of gas from Alabama-Tennessee. The Commission held § 7(b) inapplicable, finding that the "position that a customer seeking a new source of supply is analogous to an abandonment proceeding is a distortion of the purposes of section 7(b) which is designed to protect the consumer's right to a continuing source of supply" and that § 7(b) was not "designed to bind the customer to any source of supply." 417 F.2d at 515. On review the court agreed with the Commission and expressly distinguished the *United* case: "Thus the *United* case, unlike this case, concerned an abandonment by the unilateral decision of a pipeline company over which the Commission has jurisdiction, rather than a new connection to a local distributor as in this case." *Id.* at 516. The court's distinction is equally applicable here. The *Alabama-Tennessee* case involved the choice by a nonjurisdictional customer to substitute a new supplier of gas. In contrast, this case, as in *United,* involves the decision of a pipeline company subject to the jurisdiction of the Commission to abandon purchases of natural gas. Thus, *Alabama-Tennessee* is not relevant here.

the Commission offers no explanation of why its reliance was misplaced. Regarding the latter, the Commission's argument is belied by the decision itself in which the Commission explicitly found that Natural had a certificated obligation not to abandon its purchases *from United Gas.*

In *Mountain Fuel,* the Commission held that it had jurisdiction of an interstate pipeline's own production and related facilities when that production is transported in interstate commerce, in a commingled stream, along with natural gas acquired from independent producers and from other interstate pipelines. As support for the Commission's contention that the certificates issued to the pipeline included the pipeline's own production, the Commission held:

> Mountain Fuel cannot ... cease taking and transporting natural gas acquired from others or natural gas which constitutes its own pipeline production, without seeking Commission abandonment authorization. All this natural gas moves through certificated facilities which are subject to the jurisdiction of the Commission. The Supreme Court has held that an interstate pipeline's failure to take and transport natural gas acquired from a producer can constitute an abandonment of a service which the interstate pipeline renders through those facilities....
>
> If Mountain Fuel were simply to cease taking and transporting natural gas from its properties, we think "it could not be more clear," in the Supreme Court's words, that Mountain Fuel would be abandoning transportation service authorized by the Commission.

24 F.E.R.C. (CCH) at 61,294–295 (citing *United Gas Pipe Line Co. v. FPC,* 385 U.S. 83, 87 S.Ct. 265, 17 L.Ed.2d 181 (1966)). The Commission has not addressed this statement or its clear incongruity with the Commission's position in this case. Thus, the Commission has failed adequately to explain its departure in this case from its recent and consistent precedent.

## III.

Petitioners also argue that the Commission erred in refusing to hold a hearing on MRT's application to abandon its purchases. Because the Commission dismissed the application on jurisdictional grounds, it did not reach this issue. We believe that the Commission should address this issue in the first instance and thus do not decide it here.

For these reasons, the petitions for review are granted, the Commission's order is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*