**AMOCO PRODUCTION COMPANY,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent,

Midwest Industrial and Commercial Gas
Users Association, Cities Service
Gas Company, Intervenors.

No. 71–1628.

United States Court of Appeals,
Tenth Circuit.

July 28, 1972.

Carroll L. Gilliam, Washington, D. C., for petitioner.

J. Richard Tiano, Federal Power Commission, Washington, D. C., for respondent.

Dale A. Wright, Washington, D. C., for Cities Service Gas Company, intervenor.

Before LEWIS, Chief Judge, BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

Amoco Production Company (Amoco), formerly Pan American Petroleum Corporation, petitions for a review of the orders entered by the Federal Power Commission under Sections 4 and 5 of the Natural Gas Act, 15 U.S.C.A. §§ 717c and 717d, denying its petition to intervene in the "1971 Phase" of a rate proceeding. Jurisdiction vests in this court under Section 19(b) of the Natural Gas Act. The Federal Power Commission's (Commission) orders denying Amoco's petition to intervene arose in the Commission's Docket No. RP64–9 entitled Cities Service Gas Company (1971 Phase).

The principal issue in this rate proceeding is the disposition of refundable monies collected from Cities Service Gas Company (Cities) by Amoco, now held by Amoco subject to further order of the Commission. The refundable sum is $1,701,129.53, plus interest. Because both Cities and Cities' own customers claimed entitlement to these funds, the Commission set the matter for hearing to determine the extent, if any, to which Cities was entitled to receive and retain all or any part of the refundable amounts. The Commission issued notice that all interested parties should file petitions for leave to intervene.

A review of the procedural history of this case is necessary. On January 24, 1966, Amoco submitted to the Commission in Docket No. G–9279 a proposed Settlement Agreement "covering all of the Pan American rate schedules, pending certificate matters, and related section 4(e) [15 U.S.C. § 717c(e)] proceedings listed and set out on exhibits 'A' and 'B'." By order issued April 13, 1966 the Commission approved the settlement proposal. Pan American Petroleum Corp., 35 F.P.C. 502 (1966). Pursuant to the approved settlement terms the Commission ordered the proposed rates to become effective January 1, 1966 and further ordered Amoco to compute the difference between rates collected subject to refund and the related settlement rates for the period from July 1, 1962 to April 13, 1966, and the interest thereon from July 1, 1962 to January 1, 1966. 35 F.P.C. 502. The Commission ordered Amoco to retain the refundable amounts so computed, subject to the Commission's further order directing disposition. Pan American Petroleum Corp., supra. Among the proposed rate schedules whose approval resulted in Amoco's refund obligation were four relating to Amoco's sales to Cities. In Amoco's motion for approval of the Settlement Proposal it stated that, "the agreed-upon price schedule— results in immediate, substantial refunds to Cities and its customers." (Italics ours). The total of the approved settlement agreement submitted to the Commission on May 31, 1966, amounted to the sum of $5,730,163.89 refundable to Cities. The Commission thereafter requested Cities to report by letter to the Commission its intended disposition of that amount. Cities responded that it in-

tended to "flow-through" $2,096,368.06 of this amount to Cities' jurisdictional customers for the period from April 23, 1964 through April 13, 1966. This refund was pursuant to its stipulation of settlement in Docket No. RP64-9, a section 4(e) rate increase proceeding which the Commission approved on June 28, 1965. Cities Service Gas Co., 33 F.P.C. 1292 (1965). That order permitted Cities to recover from its jurisdictional customers the increased rates charged by Amoco on and after April 23, 1964, and required it to "flow-through" any refunds for that period. Cities at that time explained that it intended to retain the remainder of Amoco's refund, consisting of $1,932,666.30 attributable to sales to its non-jurisdictional customers to whom Cities' refund obligation was not subject to the Commission's jurisdiction and $1,701,129.53 relating to Cities' sales to jurisdictional customers from July 1, 1962 through April 22, 1964. Cities alleges that it is entitled to keep the latter amount because during that period it did not pass on to its jurisdictional customers the increased rate charged by Amoco.

By order issued September 11, 1967 the Commission directed Amoco to refund to Cities all but the $1.7 million and to retain that amount pending further action of the Commission concerning Cities' claim that it was entitled to retain such amount and not flow it through to its customers. Pan American Petroleum Corp., 38 F.P.C. 587 (1967). This retained amount is the subject of the instant proceeding.

On July 24, 1970 the Midwest Industrial and Commercial Gas Users Association (Midwest) filed with the Commission its petition for issuance of an order directing Amoco to release to Cities the refund amount of $1.7 million plus accrued interest, and further directing Cities to flow said amount through to its jurisdictional customers. This petition was filed in Docket No. RP64-9 which has been heretofore referred to as Docket No. RP64-9 (1971 Phase). Cities filed its answer to Midwest's peti-

tion wherein it requested that the Commission schedule an immediate hearing to enable Cities to show that it failed to earn a reasonable rate of return during the July 1, 1962—April 22, 1964, period and that it is entitled to the full $1.7 million plus interest. Cities also requested that pending such hearing the Commission grant Midwest's petition for an order directing Amoco to release to Cities the refund, and to deny Midwest's petition for an order directing the flow-through. Answers in favor of Midwest's petition were filed by City Group Gas Defense Association, et al, and by Missouri Public Service Commission, intervenors.

On August 24, 1970, Amoco filed with the Commission its response to Midwest's petition alleging that the petition was premature and prayed that it be denied without prejudice. In support of its position Amoco noted the critical natural gas shortage and the need for increased exploration and development. Both Midwest and Cities answered. They opposed Amoco's proposal on the ground that Amoco had already agreed to, and the Commission had ordered, the refunds by Amoco. They also contended that the only issue left open by the Commission's April 13, 1966 order was whether Cities had a right to retain the refund monies or whether it should be required to flow them through to its customers. Furthermore, Midwest contended that allowing Amoco to employ the refunds for exploration and development would result in undue discrimination to customers whose sales related to refunds still retained by Amoco, because virtually all of the refunds resulting from Amoco's 1966 settlement agreement had already been paid to similarly situated customers.

By an order issued March 24, 1971 the Commission instituted a hearing in Docket No. RP64-9 to determine whether Cities was legally or equitably entitled to all or any of the refunds in question. The Commission called for notices of intervention to be filed on or before April 9, 1971. On that date Midwest pe-

titioned for leave to intervene. Amoco filed its petition for leave to intervene on April 20, 1971. On that same date answers were filed by City Group, Cities and Midwest in opposition to Amoco's petition for leave to intervene. After reviewing Amoco's position that Midwest's petition urging flow-through of refunds "ignores changed circumstances that are material and relevant," the Commission stated the reason for its denial of intervention:

"A review of the record with respect to this matter indicates that the Commission by order issued April 13, 1966, approved a Pan American rate settlement proposal and that the $1.7 million here involved represents excess revenues applicable to sales made to Cities Service for the period from July 1, 1962 through April 22, 1964. Upon being informed by Cities Service that it intended to retain such amounts for itself when received from Pan American and that it did not intend to flow such amounts through to its customers, the Commission, by order issued September 11, 1967, directed Pan American to retain the $1.7 million pending further order of the Commission. It would appear therefore that Amoco's rights with respect to the forementioned $1.7 million have already been determined and that Amoco's petition to intervene should be denied. The present proceeding is to determine whether Pan American's customer, Cities Service, or Cities Service's customers are equitably entitled to such amount."

On July 26, 1971 Amoco filed its application for rehearing before the Commission urging the Commission to reconsider, contending that it was in the public interest, in lieu of refunding the $1.7 million either to Cities Service or Cities Service's customers, to use the refund monies for exploration and development in an effort to alleviate the critical shortages of natural gas.

Amoco pointed to the Commission's opinions rendered in two recent area rate proceedings wherein the Commission did permit producers such as Amoco to discharge their refund obligations by dedicating new gas to the interstate market, thereby allowing the producer to use the refund monies for exploration and development. See Texas Gulf Coast area rate proceeding, F.P.C. Docket No. AR64–2, issued May 6, 1971, Opinion No. 595, 45 F.P.C. 674, appeal pending, Texas Gulf Coast Area Rate Case (Public Service Commission of the State of New York v. F.P.C.), C.A.D.C. No. 71–1828; Southern Louisiana Area Rate Proceeding, F.P.C. Dockets Nos. AR61–2, AR69–1, issued July 16, 1971, Opinion No. 598, 46 F.P.C. 86, appeal pending, Southern Louisiana Area Rate Case (Placid Oil Company v. F.P.C.), 5th Circuit, No. 71–2761.

There is no argument but that the Commission did, in recognition of the national shortage of supply of natural gas, adopt a new policy in the two above cited 1971 opinions which the Commission believes is in keeping with the mandates of the Natural Gas Act to protect the public interest in times of natural gas shortage. The Commission, in the instant case, however, held that the new policy pronouncements could not be given retroactive effect, citing Alabama-Tennessee Natural Gas Co., 31 F.P.C. 208. (1964), affirmed, 359 F.2d 318 (5th Cir. 1966), cert. denied, 385 U.S. 847, 87 S.Ct. 69, 17 L.Ed.2d 78 (1966). In that case the Court recognized that the Commission had changed a long-standing policy. Recognizing that the primary congressional purpose of the Natural Gas Act was "to protect consumers against exploitation at the hands of natural gas companies" the Court there observed that under traditional regulatory concepts, utility company shareholders (investors), not the consumers, furnish the capital necessary for the operation of the business, citing to Railroad Commission of Louisiana v. Cumberland Telephone & Telegraph Company, 212 U.S. 414, 29 S.Ct. 357, 53 L.Ed. 577 (1909), and Lindheimer v. Illinois Bell Telephone Company, 292 U.S. 151, 54 S.Ct. 658, 78 L.Ed. 1182 (1934).

In its brief the Commission states that by giving prospective application to these new policies, it can achieve increased gas supply without prejudicing the rights of the consumers and/or the pipelines which might be entitled to refunds under prior orders. Cities strongly supports the position of the Commission. Cities points out that the Settlement Proposal effected in Docket No. G–9279, et al, came about as a result of a settlement proposal requested by Amoco following a settlement conference which culminated only after many months of extensive negotiations between representatives of Amoco, the Commission's staff, state regulatory commissions, distribution companies, consumer representatives and pipeline companies, including Cities and representatives of its customers and consumers. Furthermore, Cities emphasizes that by Amoco's motion it strongly supported the Settlement Proposal as being in the public interest and specifically requested its approval by the Commission. Amoco counters by challenging the lawfulness of its denial of intervention and of its opportunity to be heard upon an alternative proposal for the Commission's consideration in the public interest brought about in light of a gas shortage and increased curtailments on Cities' system. Amoco argues that it is in the public interest and in the interest of ultimate consumers that, instead of committing the refund to Cities or to Cities' customers, that Amoco be permitted to commit the funds to exploration and development of additional natural gas supplies to be dedicated to Cities' system. Thus the issues are so joined for our consideration.

■ Section 1(b) of the Natural Gas Act delegated unto the Federal Power Commission three broad categories of regulatory power: (1) the transportation of natural gas in interstate commerce; (2) the sale of natural gas in interstate commerce for resale; and (3) natural gas companies engaged in such transportation or sale. Panhandle Eastern Pipe Line Co. v. Public Service Commission of Indiana, 332 U.S. 507, 68 S.Ct. 190, 92 L.Ed. 128 (1947). Following extensive congressional hearings the Federal Power Commission was granted express congressional jurisdiction in the Natural Gas Act granting it rate setting authority over all interstate sales for resale. In a very recent opinion the United States Supreme Court has again reaffirmed the necessary degree of flexibility vesting in the Federal Power Commission under the Natural Gas Act in order to provide it with the necessary authority to protect the public interest, thus recognizing that the Commission's broad responsibilities demand a generous construction of its statutory authority. Rural Power Commission v. Louisiana Power & Light Co., et al, 406 U.S. 621, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972). See also Permian Basin Area Rate Cases, 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968) and United Gas Pipe Line Company v. Federal Power Commission, 385 U.S. 83, 87 S.Ct. 265, 17 L.Ed.2d 181 (1966).

When the Commission entered its orders of April 13, 1966 and September 11, 1967 relating to the refund monies here involved, it was the established policy of the Commission, interpretive of the primary purpose of the Natural Gas Act, that its orders must be directed toward protection of the users of gas against exorbitant exactions at the hands of natural gas companies and, on the other hand, to assure natural gas companies the right of full return from their operations. Colorado Interstate Gas Co. v. Federal Power Commission, 209 F.2d 717 (10th Cir. 1953), (Reversed on other grounds 348 U.S. 492, 75 S.Ct. 467, 99 L.Ed. 583 [1955]). See Natural Gas Act, Section 1 et seq., 15 U.S.C.A. § 717 et seq. In accordance with this primary purpose, gas rate settlement agreements were encouraged by the Federal Power Commission.

■ Settlement agreements have been encouraged by this court, "subject only to a prohibition against the denial of a specific right." Continental Oil Company v. Federal Power Commission, 373

F.2d 96 (10th Cir. 1967), involved a petition for review following a settlement agreement entered into between the petitioners and four gas distribution companies relating to rate settlements involving offshore sales. After the settlement agreement was submitted to the Commission, and following notice and hearing, the settlement agreement was approved conditionally by the Commission. Chief Judge Lewis, speaking for this court, said:

"All parties agree that the issue presented must be determined from an interpretation of the language of the settlement agreement viewed against the circumstances then existing including the mandates of the Natural Gas Act." 373 F.2d at 99.

The opinion further states:

"This court has long recognized the right of the Commission to set the scope of its proceedings and to utilize its administrative tools within the broadest of discretions, subject only to a prohibition against the denial of a specific right. Colorado Interstate Gas Co. v. F.P.C., 10th Cir., 370 F.2d 777, and cases cited. But settlement agreements are encouraged for the very purpose of setting rights, providing for stability in the exercise of those rights, and, unless such agreements run afoul of the Natural Gas Act or the public good, should be interpreted to accomplish the clear and stated purpose contained therein." 373 F.2d at 100.

To the same effect see Texas Eastern Transmission Corp. v. Federal Power Commission, 306 F.2d 345 (5th Cir. 1962), where the Court stated that gas settlement agreements should be encouraged, and the Federal Power Commission should not read into settlement contracts things which are not expressed or not there, particularly where the settlement was subjected to close scrutiny by the Commission and its staff. The long-standing Commission policy of encouraging settlements, especially in complex proceedings involving many parties, was recognized and re-affirmed only recently by the Commission in its opinion No. 619, Federal Power Commission v. Tennessee Gas Pipe Line Company, (May 19, 1972), reported in 40 Law Week 2816.

Section 15(a) of the Natural Gas Act, 15 U.S.C.A. § 717n(a) vests broad discretion in the Commission to permit intervention in its administrative proceedings. It may admit as a party "any other person whose participation in the proceeding may be in the public interest." Nothing in the Natural Gas Act makes it mandatory upon a Court of Appeals, on review of a Commission order, to allow applications for leave to intervene, even in those cases where the applicant had been admitted as a party to the administrative proceedings below. The matter lies within the discretion of the court, and in general Courts of Appeal are guided by analogy to Rule 24 of the Federal Rules of Civil Procedure.

Indeed, the Federal Power Commission, as the guardian of the public interest, has been held to be charged, in every proceeding, and without regard to the absence of protests or applications for intervention in opposition, to determine whether the matter before it upon application is in the public interest or calls for some other disposition. Panhandle Eastern Pipe Line Co. v. Federal Power Commission, 386 F.2d 607 (3rd Cir. 1967). Judicial action cannot supplant discretionary authority granted to and vesting in the Commission. Where settlement agreements encouraged by the Commission within its regulatory authority, are without ambiguity, such agreements bind both parties—the Commission and the regulated entity, thus allowing both to avoid the delays and uncertainties of litigation. Texas Gas Transmission Corporation v. Federal Power Commission, 441 F.2d 1392 (6th Cir. 1971).

The orders of the Federal Power Commission denying Amoco's petitions for intervention in Docket No. RP64–9 (1971 Phase) are affirmed.

Affirmed.