**NATIONAL FUEL GAS SUPPLY CORPORATION, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Berkshire Gas Company, et al., Intervenors.**

**No. 88–1684.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 13, 1990.

Decided Aug. 7, 1990.

George L. Weber, with whom Kenneth L. Glick, was on the brief for petitioner.

Jo Ann Scott, Attorney, FERC, with whom Joseph S. Davies, Deputy Sol., FERC, was on the brief for respondent. Robert Solomon, Joel M. Cockrell, and Jerome M. Feit, Attorneys, FERC, also entered appearances for respondent.

John S. Schmid, Gearold L. Knowles, Bruce Glendening, and Cheryl L. Jones entered appearances for intervenors.

Before BUCKLEY, D.H. GINSBURG, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

National Fuel Gas Supply Corporation filed an application under § 7 of the Natural Gas Act for a certificate of public convenience and necessity authorizing it to offer interruptible sales of natural gas to various "off-system" customers. The Commission made its approval conditional upon (1) National's accepting a blanket transportation certificate, which would require it to provide open access transportation and to allow its customers to exercise certain contract demand (CD) conversion rights; and (2) reopening of the record in a rate case regarding National's sales to on-system customers, in order to take account of the newly-authorized off-system sales. National Fuel Gas Supply Corp., 42 FERC ¶ 61,211, reh'g granted in part, 44 FERC ¶ 61,104 (1988).

We grant the petition to review the Commission's order insofar as it conditions approval of National's proposed off-system sales certificate upon its acceptance of a blanket transportation certificate; that condition exceeds the scope of the Commission's authority under § 7, which was the only provision upon which it relied. In addition, we vacate as moot the Commission's order reopening the rate proceeding concerning National's sales to on-system customers.

I. BACKGROUND

National filed for a certificate of public convenience and necessity authorizing it for one year to sell natural gas, on an interruptible basis, to seventeen off-system customers. The Commission found that National has sufficient supply to meet both its existing and the proposed commitments, and that the off-system sales would lower National's weighted average cost of gas by contributing to its fixed costs, which would benefit its on-system customers. The Commission also found that the rate that National had proposed would be "non-discriminatory, based upon fully allocated costs and compensatory, and is appropriate for the proposed sale." Accordingly, the Commission concluded that the "sales are required by the public convenience and necessity."

The Commission also decided, however, to place two conditions upon its certification of the sales. At the time that it issued its order, the record had recently closed in a proceeding relating to the rates paid by National's current on-system customers. The Commission ordered that the record be reopened in that proceeding in order "to determine the annual level of additional

volumes that will be sold under the instant application," and to compute two sets of rates for National's sales: one based upon the assumption that National does, and the other upon the assumption that it does not, make the new, off-system sales.

Second, at the request of a pipeline-producer in competition with National (scilicet Columbia Gas), the Commission also conditioned its approval of the sales certificate upon National's accepting a blanket certificate, pursuant to which it would offer open access transportation and allow customers to convert a portion of their CD for sales to transportation. *See* 18 C.F.R. § 284.10, 284.221 *et seq.* The Commission explained that, although National seeks to take advantage of transportation over various open access pipelines in order to sell gas, in some cases to those pipelines' traditional customers, it does not provide open access transportation to others; further, its customers do not have the right to convert their CD to transportation. As a result, they are not assured of the ability to buy gas from other sellers and have it shipped to them over National's system. Accordingly, the Commission observed:

> National Fuel can remain relatively secure in maintaining its own traditional customer base while at the same time competing for the traditional sales customers of other pipelines. We agree with Columbia that this situation would be inequitable. Accordingly, we will require National Fuel to accept a blanket certificate ... prior to commencing sales under the certificate issued herein.

On rehearing, the Commission accepted National's contentions that it had not discriminated in its transportation services and was in compliance with all Commission rules and regulations, but considered those points "immaterial to whether a blanket certificate should be required as a condition to this proceeding." The Commission noted that there are differences between the open access non-discriminatory transportation provided under a blanket certificate and non-discriminatory transportation provided under an individual § 7(c) certificate; in particular, "[t]he delay engendered by the certification process may effectively

prohibit a customer from searching out other competitive short-term supplies of gas." The Commission also pointed out that a pipeline that has accepted a blanket certificate must, under § 284.10, allow CD conversion; that enables a customer to enter into both short- and long-term purchase commitments, providing the flexibility necessary to the "workably competitive environment" that Order No. 500 is intended to facilitate.

Finally, the Commission rejected National's claim that the blanket certificate condition is precluded by our decisions in *Northern Natural Gas Co. v. FERC*, 827 F.2d 779 (1987) (en banc), and *Panhandle Eastern Pipeline Co. v. FERC*, 613 F.2d 1120, 1127–33 (1979). It reasoned that those cases are not relevant because in this case it was "not modifying any rates through a section 7 proceeding. Rather," it said it had "found that National Fuel's proposal is only in the public convenience and necessity if National Fuel obtains a Part 284 blanket certificate."

On review, National argues that the blanket certificate condition exceeds the Commission's authority under § 7(e), is inconsistent with our decision in *Northern Natural Gas* because it circumvents the procedures of §§ 4 and 5 of the NGA, and is arbitrary and capricious. It also challenges the Commission's decision to reopen the on-system rate proceeding, but recognizes that that issue might be moot.

## II.  ANALYSIS

■ In *Northern Natural Gas*, we held that the Commission may not condition its approval of a service upon the pipeline's altering a previously approved rate that is not currently before it, because doing so would set to naught the procedural protections afforded by §§ 4 and 5. 827 F.2d at 786–93. *Northern Natural Gas* thus preserves Congress's allocation of the Commission's powers among the various provisions of the NGA. In contrast, the matter before us today does not require that we explore further the interplay of the Commission's various authorities (under §§ 5

**1522**

and 7, in particular) because we conclude that, on the record before us, the Commission lacks power under either section to require National to accept a blanket transportation certificate.

Section 7(e) authorizes the Commission to attach to a certificate only "such reasonable terms and conditions as the public convenience and necessity may require." 15 U.S.C. § 717f(e). Here, in its original order, the Commission squarely found that National's proposed "sales are required by the public convenience and necessity," quite apart from conditioning their certification upon the pipeline's filing for a blanket transportation certificate. It was thus clear at the outset that the Commission considered certification of National's proposed off-system sales to be in the public interest regardless of whether the pipeline also accepted a blanket transportation certificate.

Only on rehearing, in response to National's objection to the blanket certificate condition, did the Commission attempt to recast its position, stating that "National Fuel's proposal is only in the public convenience and necessity if National Fuel obtains a Part 284 blanket certificate." The later statement, however, appears to be nothing more than an afterthought designed to avoid a conflict between the condition here and our decision in *Northern Natural Gas.* The Commission offered no reason why, contrary to its original finding, the sales certificate will not be in the public interest if National does not accept a blanket transportation certificate, and the reasoning underlying its original conclusion is in no way affected if National does not.

■ We have no reason to doubt the reasonableness of the Commission's implicit conclusion that National's providing open access transportation would serve the public convenience and necessity. The Commission may not, however, when it lacks the power to promote the public interest directly, do so · indirectly by attaching a condition to a certificate that is, in unconditional form, already in the public convenience and necessity. *See Sunray Mid–Continent Oil Co. v. FPC,* 364 U.S. 137,

152, 80 S.Ct. 1392, 1401, 4 L.Ed.2d 1623 (1960) ("once want of power to do this directly were established, the existence of power to achieve the same end indirectly through the conditioning power might well be doubted"); *cf. Richmond Power & Light v. FERC,* 574 F.2d 610, 620 (D.C.Cir. 1978) (the Commission may not achieve indirectly through conditioning power of Federal Power Act what it is otherwise prohibited from achieving directly).

We need not decide in what circumstances, if any, the Commission could require a pipeline to accept a blanket certificate, pursuant either to an individual or to a generic § 5 finding. It is clear that the Commission did not invoke its § 5 authority in this case; its discussion of the open access condition focuses instead upon the scope of its authority under § 7, and nowhere therein does it even mention § 5. Indeed, counsel for the Commission conceded at oral argument that, on the facts of this case, the Commission does not have authority under § 5 to require National to accept a blanket certificate. And FERC does not even suggest that it has concluded, on a generic basis, that the "just and reasonable" requirement of § 5 necessitates the imposition of a blanket certificate in any circumstance. (FERC does say, "Because the Commission has made a generic Section 5 finding under Order 436, that certain rate designs are necessary if a rate is to be just and reasonable, it has met its burden under Section 5 with respect to requiring National to provide open-access service under a blanket certificate," but it neither explains this cryptic remark nor refers us to any generic finding relevant to this issue.) On the contrary, when the Commission adopted the blanket certificate and open access transportation concepts in Order No. 436, it emphasized that a pipeline "may *voluntarily choose* " whether to accept such a certificate. *Regulation of Natural Gas Pipelines After Partial Wellhead Decontrol,* 50 Fed.Reg. 42,408, 42,428 (1985) (emphasis in original), *vacated on other grounds sub nom. Associated Gas Distribs. v. FERC,* 824 F.2d 981 (D.C. Cir.1987). The Commission expressly noted in Order No. 436 that it was not even

deciding "whether it may ever order transportation on a mandatory basis," *id.*, and it points to no order issued since that time in which it revisited that issue.

### III. CONCLUSION

For the foregoing reasons, the petition for review of the blanket certificate condition is granted. Inasmuch as both parties agree that the other issue raised by the petitioner—the reopening of National's on-system rate proceeding—is now moot because those rates have been superseded by new ones, we vacate the Commission's orders with respect to that issue. *See A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 329–30, 82 S.Ct. 337, 340–41, 7 L.Ed.2d 317 (1961); *Northwest Pipeline Corp. v. FERC*, 863 F.2d 73, 78–79 (D.C.Cir.1988).

*So ordered.*